OPINION OF THE COURT
Terry Jane Ruderman, J.
This appropriation claim involves an irregularly shaped parcel of land in Putnam County which comprised four contiguous parcels described on the tax map of the Town of Carmel, County of Putnam, as lots 65.20-1-1, 65.20-1-3, 65.20-1-4 and 65.20-1-9 (hereinafter 1-1, 1-3, 1-4, 1-9). On October 12, 1999, as part of *771 the Putnam County Bikeway II project to create a bicycle path, the New York State Department of Transportation (DOT) appropriated 4.41 acres of claimant’s property that had frontage on Weber Hill Road and an access easement over Old Wood Road to Weber Hill Road. This included all of lot 1-4 and rendered claimant’s remaining contiguous lots 1-1, 1-3 and 1-9 without access to Weber Hill Road (see claimant’s exhibit C; defendant’s exhibit 2).
Settlement Placed on the Record
On December 10, 2002, a stipulation of settlement and the terms of the settlement were placed on the record in open court by claimant’s counsel and defendant’s counsel. It was agreed that defendant would pay $200,000, less the advance payment already made, with interest at the statutory rate from the date of the appropriation (claimant’s exhibit D at 2-3). Additionally, claimant would be deeded a 35-foot-wide access corridor from Weber Hill Road to lot 1-3. The corridor would be fenced and the drainage as indicated in the bikeway plans would be located so as to no longer pass from the bikeway onto claimant’s property.
Claimant Seeks to Amend Settlement
Two days after placing the stipulation of settlement on the record, claimant wrote to Suzanne Bridges, a Real Estate Specialist II and representative of DOT who had been authorized to negotiate and approve the terms of the settlement on behalf of DOT (defendant’s exhibit 2). By letter dated December 12, 2002, claimant sought “to amend the settlement” by extending the 35-foot access “about 200 feet longer” to end at lot 1-9. Claimant explained that such amendment “would result in a smooth arc line; reduce angles and reduce cost of fencing. And, it would give me a little more land towards development ... I would feel reasonably little more compensated [szc]” (id.). The proposed amendment is highlighted on a map in defendant’s exhibit 2.
By letter dated March 17, 2003, claimant’s attorney informed the court that defendant could not extend the agreed upon access road to end at lot 1-9, as claimant had requested (court file). Further, claimant’s attorney noted that claimant does not appear to have title to lot 1-1 and there was pending litigation regarding this issue. Therefore, according to claimant, to end the access road at lot 1-3 does not provide access to claimant’s *772 remaining property, 1-9, because 1-3 is burdened with wetlands. Accordingly, claimant’s attorney sought a conference with the court to set aside the settlement. The matter was scheduled for a conference with the court on May 1, 2003.
Court Hearing Regarding Claimant’s Application to Set Aside Settlement
On May 1, 2003, claimant’s attorney argued in open court that the settlement was entered into based upon the assumption that claimant owned lot 1-1 and that this assumption was a mistake which warrants setting aside the settlement. Specifically, claimant’s attorney referred to the pending litigation in Supreme Court to quiet title regarding lot 1-1. It was alleged in the Supreme Court action that Putnam County had incorrectly deeded lot 1-1 in foreclosure to claimant. By letter dated December 9, 2002, the attorney representing claimant in the Supreme Court action had informed claimant’s attorney in this matter that a settlement had been proposed to compensate claimant for incorrectly deeding her lot 1-1. The proposed settlement included a money payment and a deed to lot 1-2 (claimant’s exhibit E). As of the date of this application, the proposed settlement in Supreme Court has not been accepted by claimant (claimant’s reply, exhibit A).
Claimant’s attorney admittedly knew of the pending litigation in Supreme Court when the stipulation of settlement in this court was entered into on December 10, 2002. Nonetheless, claimant’s attorney argued to this court that the agreed to access road, which ends at claimant’s lot 1-3, is not workable because it leaves claimant’s lot 1-9 and lot 1-2 (which is part of the proposed settlement in Supreme Court) without access to Weber Hill Road and access cannot be had via 1-3 because of intervening wetlands on 1-3.
In opposition to the application, defendant’s attorney argued that all the factors recited by claimant’s attorney were known to all parties prior to entering into the settlement on December 10, 2002, i.e., the pending litigation in Supreme Court regarding the cloud over claimant’s title to lot 1-1 and the presence of wetlands on lot 1-3.[1] Indeed, it was with such knowledge of these factors that the settlement specifically provided that the access road would extend to lot 1-3, to which claimant’s title *773 was not in dispute. Defendant argued that there was no “mistake” of fact warranting setting aside the settlement, rather claimant has merely reconsidered the terms of the settlement and is now seeking to improve the terms of the settlement (claimant’s exhibit G at 7).
Defendant’s attorney further argued that claimant’s assumption of ownership of lot 1-2 as part of the proposed settlement in the Supreme Court action is not relevant in this matter because, even if the access road were extended to lot 1-9, lot 1-2 would be landlocked by lot 1-9 and lot 1-3. The court also noted at the hearing that, even if claimant owned 1-1, the terms of the stipulation did not provide that lot 1-9 would have access to Weber Hill Road, except through lot 1-3 (id. at 14). In response to claimant’s request for an extension of the agreed to access roadway, defendant stated that it would require a remediation of wetlands within the confines of the bikeway and would require an alteration of permits issued by the federal government.
The court reserved decision on claimant’s application and provided the parties with the opportunity to submit papers to the court.
Analysis
Stipulations of settlement are favored by the courts and not lightly set aside (see Hallock v State of New York, 64 NY2d 224, 230 [1984]). “A stipulation of settlement, particularly one made in open court, is to be strictly enforced, and a party will not be relieved from the consequences of a stipulation unless it establishes cause sufficient to invalidate a contract, such as fraud, collusion, mistake, or accident” (Quality Ceramic Tile & Marble Co. v Cherry Val. Ltd. Partnership, 259 AD2d 607, 607 [1999]). A mutual mistake sufficient to warrant vacating a stipulation of settlement requires proof that the mistake existed at the time of the stipulation and that it was so substantial that the stipulation does not represent a true meeting of the minds (Mahon v New York City Health & Hosps. Corp., 303 AD2d 725 [2003]; Matter of Janet L., 287 AD2d 865 [2001] [mutual mistake not established where in hindsight the terms of the settlement are difficult to effectuate]). “Courts may not rewrite an agreement between parties” (Matter of Evans v Board of Assessment Review of Town of Catskill, 284 AD2d 753, 755 [2001]) and “a court should not, under the guise of interpretation, make a new contract for the parties” (Sklerov v Sklerov, 231 AD2d 622, 622 *774 [1996]). Courts will not set aside a stipulation merely because in “hindsight” a party decides that the terms of the stipulation were “improvident” (Town of Clarkstown v M.R.O. Pump & Tank, 287 AD2d 497, 498 [2001]).
Claimant argues that the stipulation of settlement should be vacated on the ground of mutual mistake because the parties negotiated the settlement on “an incorrect premise, that is, Claimant being the title owner to [lot 1-1] . . . Thus, a true meeting of the minds was impossible” (claimant’s reply affirmation[2] ¶ 5).
The assertion made by claimant’s attorney of mutual mistake is belied by the record of the hearing before this court on May 1, 2003 and the papers before the court on this application (see Lowinger v Lowinger, 303 AD2d 723 [2003] [record belies plaintiffs claim that her attorney did not understand the nature of the stipulation]). Indeed, the record of the hearing indicates that this very issue was addressed and effectively refuted by defendant’s attorney:
“[A]ll of the factors that [claimant’s attorney] now cites were known on December 10, 2002. It was known at that point that there had been a settlement in litigation that had been a cloud on [claimant’s] title to lot [1-1]. That was considered as part of the settlement and it was agreed that the access to be deeded to her would extend from Weber Hill Road to plot [1-3].” (Claimant’s exhibit G at 6.)
Claimant’s attorney conceded that he was aware of the ongoing Supreme Court litigation (id. at 8) and it was undisputed that on December 10, 2002, claimant, claimant’s attorney, and defendant’s attorney all knew that claimant “did not own” lot 1-1 and that such factor was considered as part of the negotiated settlement (id. at 9). It was further unrefuted that claimant’s attorney had received the letter dated December 9, 2002 regarding the Supreme Court action settlement prior to entering into the stipulation with this court (id. at 17). The record of the May hearing so states:
“[Defendant’s attorney]: If I may, Your Honor, on December 10, 2002, we knew that [claimant] did hot own [lot 1-1] . . .
*775 “the court: Who is we, eveiyone?
“[defendant’s attorney]: Well, [claimant’s attorney], myself, [claimant] ... it was discussed as part of the negotiations leading to the stipulation that was placed on the record before you . . . And it was agreed that the corridor would extend to the first parcel that [claimant] did own, and to which her title is not in dispute and that is [lot 1-3].” (Id. at 9-10 [emphasis added].)
Additionally, it was also addressed at the hearing that any settlement in the Supreme Court action with regard to a conveyance of lot 1-2 did not impact the settlement in this claim, as defendant’s attorney indicated: “Her assumption of ownership of [lot 1-2], as [claimant’s attorney] just indicates, doesn’t change the access issue at all, because any right of way along the bikeway would not give her direct access to that parcel. It is sheltered from the bikeway by her other holdings.” (Id. at 10.)
It is noteworthy that in the instant case, claimant was represented by counsel and actively participated in settlement negotiations (see Mullings v Mullings, 288 AD2d 449 [2001] [both parties were represented by counsel and participated in and agreed to the stipulation that was placed on the record]; Town of Clarkstown v M.R.O. Pump & Tank, 287 AD2d 497 [2001], supra [stipulations not lightly set aside particularly where the terms were read into the record and the party seeking to set aside was represented by counsel]). Moreover, there is no evidence that the stipulation of settlement was “manifestly unfair” (Mullings v Mullings, 288 AD2d 449, 449 [2001], supra) or “so inequitable as to be deemed unconscionable” (Town of Clarkstown v M.R.O. Pump & Tank, 287 AD2d 497, 498 [2001], supra).
Upon conducting the hearing and considering the papers submitted, the court finds that the application made by claimant’s attorney for a modification or to set aside the stipulation is no more than an attempt to improve the terms of the agreed to stipulation because, when viewed in hindsight, it appears improvident (see Town of Clarkstown v M.R.O. Pump & Tank, 287 AD2d 497, 498 [2001], supra). The record of the hearing indicates that claimant’s attorney oversimplifies the application without regard to the established law which sets forth the circumstances under which a court may grant such application. Claimant’s attorney stated at the hearing:
“We are perfectly willing to go along with the settle *776 ment. All that we have asked is that the Department of Transportation extend the corridor so that it could reach the lot which, or the portion of the property which has been marked [lot 1-9]. That’s all we require, is an extension.” (Claimant’s exhibit G at 11.)
Claimant’s attorney further stated, “[t]he Department of Transportation, you build thousands of miles of roadway” (id. at 12).
The court notes that the hearing was conducted at the request of claimant’s attorney and that claimant also had the opportunity to submit papers in further support of the application. Nonetheless, claimant’s attorney failed to put forth any concrete evidence substantiating his conclusory allegation that the wetlands situated on lot 1-3 prevented access from claimant’s other lots to Weber Hill Road via lot 1-3. This was also pointed out at the hearing by defendant’s attorney:
“Your Honor, we have heard no reason why [claimant] cannot have access from this point to the entirety of her property other than that there are wetlands on her property . . . those wetlands would have to be remediated for any development of this property, altered in some fashion. So, all we are talking about is the state now giving her something that will ease her burden for the development of the property, other than access.” (Id. at 13-14.)
Accordingly, this court finds that claimant has failed to establish any basis for either modifying or setting aside the stipulation of settlement.
Motion denied.

. Defendant’s attorney produced a copy of the letter dated December 9, 2002, which was given to him by claimant’s attorney on December 10, 2002 (claimant’s exhibits E, G at 17).

. Claimant’s reliance upon Atco Canton Corp. v Costanzi (133 AD2d 949 [1987]), as set forth in her motion papers and reply papers, is misplaced. In that case, the matter was remitted for an evidentiary hearing to determine if the attorney had either actual or apparent authority to enter into the stipulation (id. at 950). No such issue exists in the instant case.